Opinions of the Colorado Supreme Court are available to the
public and can be accessed through the Judicial Branch's homepage at
http://www.courts.state.co.us. Opinions are also posted on the
Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE
February 21, 2017

**2017 CO 11**

**No. 16SC283, <u>Youngquist v. Miner</u>—Workers' Compensation —Personal Jurisdiction—Specific Jurisdiction.**

In this case, the supreme court considers whether Colorado has jurisdiction to award benefits for out-of-state work-related injuries and impose a statutory penalty on an employer under section 8-41-204, C.R.S. (2016), when the employer is not a citizen of Colorado and has no offices or operations in Colorado, but hired a Colorado citizen within the state. The supreme court concludes that under the facts of this case, Colorado lacks personal jurisdiction over the employer and therefore the employer cannot be subject to the Workers' Compensation Act of Colorado, sections 8-40-101 to 8-47-209, C.R.S. (2016). Accordingly, the supreme court reverses the judgment of the court of appeals.

# The Supreme Court of the State of Colorado

2 East 14th Avenue • Denver, Colorado 80203

## 2017 CO 11

**Supreme Court Case No. 16SC283**
*Certiorari to the Colorado Court of Appeals*
Court of Appeals Case No. 15CA1165

### Petitioner:

Youngquist Brothers Oil & Gas, Inc.,

v.

### Respondents:

Travis Miner and the Industrial Claim Appeals Office of the State of Colorado.

## Judgment Reversed
*en banc*
February 21, 2017

**Attorneys for Petitioner:**
Treece Alfrey Musat P.C.
James B. Fairbanks
Kathleen M. Byrne
  *Denver, Colorado*

**Attorneys for Respondent Travis Miner:**
Killian Davis Richter & Mayle, P.C.
Damon J. Davis
Christopher H. Richter
  *Grand Junction, Colorado*

**Attorneys for Respondent Industrial Claim Appeals Office of the State of Colorado:**
Cynthia H. Coffman, Attorney General
Evan P. Brennan, Assistant Attorney General
  *Denver, Colorado*

**CHIEF JUSTICE RICE** delivered the Opinion of the Court.

¶1    This case requires us to determine whether Colorado has jurisdiction to award benefits for out-of-state work-related injuries and impose a statutory penalty on an employer under section 8-41-204, C.R.S. (2016), when the employer is not a citizen of Colorado and has no offices or operations in Colorado, but hired a Colorado citizen within the state.  We hold that on the facts presented here, Colorado lacks personal jurisdiction over the employer.[1]

## I.  Facts and Procedural History

¶2    Respondent Travis Miner was a resident of Colorado when a friend told him that Petitioner Youngquist Brothers Oil & Gas, Inc. ("Youngquist"), a North Dakota corporation, was looking for employees to work on its oil rigs in North Dakota.  On the morning of December 23, 2013, from his home in Colorado, Miner applied online for a job as a derrickhand for Youngquist.  That afternoon, a representative from Youngquist called Miner to conduct a phone interview.  Miner was hired during the call, and the representative asked if Miner could come to North Dakota the next day.  Miner said that he could, and Youngquist then purchased Miner a plane ticket from Grand Junction to North Dakota and e-mailed it to him.

---

[1] We granted certiorari on the following issue:

> Whether the court of appeals erred in concluding that Colorado has jurisdiction to award benefits for out-of-state work-related injuries and impose a statutory penalty on the employer under the Workers' Compensation Act, section 8-41-204, C.R.S. (2015), when the employer is not a citizen of Colorado, has no offices or operations in Colorado, but hired a Colorado citizen within the state.

¶3     When Miner arrived at the work site on December 24, he completed paperwork, including a W-2 tax withholdings form and an I-9 eligibility for employment form. On the paperwork, Miner indicated his residence was in Grand Junction, Colorado. Once he filled out the paperwork, Miner started working as a derrickhand.

¶4     On December 25, during his second shift working for Youngquist, Miner was injured. He did not report the injury right away but eventually reported it on December 29. He then returned to Colorado. Youngquist, which had workers' compensation insurance in North Dakota, reported Miner's injury to North Dakota's workers' compensation agency. North Dakota denied Miner's workers' compensation claim because Miner had a pre-existing back injury, and Miner did not appeal the denial. Miner then sought Colorado workers' compensation benefits, and in October 2014, a Colorado administrative law judge ("ALJ") conducted a hearing.

¶5     The ALJ found that Miner had suffered a compensable work-related injury and awarded him benefits. The ALJ also determined that Miner was hired in Colorado and was injured within six months of leaving Colorado, meaning Miner's claim was subject to the Workers' Compensation Act of Colorado ("Act"), sections 8-40-101 to 8-47-209, C.R.S. (2016). The ALJ also imposed a fifty-percent penalty on Youngquist for failing to carry workers' compensation insurance in Colorado, as mandated by the Act. See § 8-43-408(1), C.R.S. (2016).

¶6     Youngquist appealed to the Industrial Claim Appeals Office of the State of Colorado which affirmed the ALJ's Order. Then, Youngquist appealed to the court of appeals, arguing that Colorado lacked personal jurisdiction over it and that it therefore

was not subject to the Act. The court disagreed and affirmed the ALJ's Order. Youngquist Bros. Oil & Gas, Inc. v. ICAO, 2016 COA 31, ¶¶ 2, 10, __ P.3d __. We granted certiorari. We now reverse the court of appeals.

## II. Analysis

¶7     The crux of the issue before us is whether Colorado may constitutionally exercise personal jurisdiction over Youngquist for the purposes of Miner's workers' compensation claim. We hold that Youngquist did not have sufficient minimum contacts with Colorado for the state to exercise personal jurisdiction over Youngquist. Therefore, Youngquist cannot be constitutionally subject to the Act.

### A. Standard of Review

¶8     Whether the facts as found by the ALJ support the exercise of personal jurisdiction is reviewed de novo. See Archangel Diamond Corp. v. Lukoil, 123 P.3d 1187, 1192 (Colo. 2005), as modified on denial of reh'g (Dec. 19, 2005).

### B. Personal Jurisdiction

¶9     For a Colorado court to exercise jurisdiction over a non-resident defendant, the court must find jurisdiction under an applicable statute, and such a finding must comport with due process. See id. at 1193.

¶10     Like other states, Colorado has promulgated statutes that govern benefits claims for workers who are injured in the course and scope of their employment. Specifically, the General Assembly promulgated the Act and outlined in the Act's extraterritorial provision, section 8-41-204, when it is appropriate for Colorado to exercise jurisdiction over workers' compensation claims arising from injuries that occur outside of Colorado.

This section provides that an employee is entitled to workers' compensation benefits when an injury occurs outside Colorado, so long as the injured worker was "hired" in Colorado and not more than six months have elapsed since the employee left Colorado. § 18-41-204. The parties do not dispute that Miner's injuries occurred outside of Colorado, that Miner was hired while in Colorado, and that the injury occurred within six months of Miner's leaving Colorado. Therefore, there is no dispute that Youngquist is subject to the Act's extraterritorial provision. Instead, the parties dispute whether the Act can constitutionally be applied to Youngquist. Specifically, Youngquist contends that it has insufficient contacts with Colorado, and that Colorado therefore may not constitutionally exercise personal jurisdiction over it. As a result, Youngquist asserts that the ALJ's decision awarding benefits to Miner and imposing penalties on it pursuant to the Act violated its due process rights.

¶11 The due process clauses of the United States and Colorado constitutions operate to limit a state's exercise of personal jurisdiction over non-resident defendants. See Keefe v. Kirschenbaum & Kirschenbaum, P.C., 40 P.3d 1267, 1270 (Colo. 2002); Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 413–14 (1984). Specifically, due process requires that a non-resident corporate defendant have "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)). "The quantity and nature of the minimum contacts required depends on whether the plaintiff alleges specific or general jurisdiction." Archangel, 123 P.3d at

5

1194. Here, because no party asserts that Youngquist is subject to general jurisdiction, we discuss only specific jurisdiction.

¶12    "Specific jurisdiction is properly exercised where the injuries triggering litigation arise out of and are related to 'activities that are significant and purposefully directed by the defendant at residents of the forum.'"  Id. (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985)).  To determine whether the defendant has sufficient minimum contacts, we consider "(1) whether the defendant purposefully availed himself of the privilege of conducting business in the forum state, and (2), whether the litigation 'arises out of' the defendant's forum-related contacts."  Id.  The "'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random or fortuitous contacts or the unilateral activity of [a third party]."  Burger King, 471 U.S. at 475 (internal quotation marks and citations omitted).  "[S]ingle or occasional acts related to the forum may not be sufficient to establish jurisdiction if their nature and quality and the circumstances of their commission create only an 'attenuated' affiliation with the forum."  Keefe, 40 P.3d at 1271 (citing Burger King, 471 U.S. at 475–76; Travelers Health Ass'n v. Virginia, 339 U.S. 643, 648 (1950)).  However, "when a defendant has deliberately created 'continuing obligations' between himself and residents of the forum, he has manifestly availed himself of the privilege of conducting business there."  Id.  Ultimately, the question of jurisdiction does not turn on "mechanical tests or conceptualistic theories of the place of contracting or performance."  Id. at 1272.  Instead, it often involves an "ad hoc analysis of the facts."  Id.

¶13 Once it is established that a defendant has the requisite minimum contacts, "these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" Id. at 1271 (citing Burger King, 471 U.S. at 476). These "fairness factors" include "the burden on the defendant, the forum state's interest in adjudicating the dispute, and the plaintiff's interest in obtaining convenient and effective relief." Id.

## C. Personal Jurisdiction over Youngquist

¶14 Here, Youngquist's contact with Colorado was limited—a representative from Youngquist made a phone call to Miner while Miner was in Colorado in response to an employment inquiry made by Miner, and then Youngquist paid for Miner to fly to North Dakota. Though the parties do not dispute that Youngquist hired Miner during this phone call, this fact alone is not dispositive of jurisdiction. Instead, Youngquist's contact with Colorado creates only the "attenuated affiliation with the forum" deemed insufficient to establish jurisdiction. See id. A single responsive telephone call followed by payment for a ticket cannot constitute purposeful availment of the privileges of conducting business inside of Colorado if the requirement of purposeful availment is to be meaningful. This contact is better characterized as "random and fortuitous contact" with Colorado. See Burger King, 471 U.S. at 475. For example, Miner could have easily been in another state when a Youngquist representative called him and he then could have flown from that state to North Dakota. Therefore, Youngquist's contact with Colorado was unintentional—it was simply "random and fortuitous" that Youngquist contacted Miner while he was in Colorado.

7

¶15 Moreover, Youngquist's actions were neither "significant" nor "purposefully directed at residents of the forum." See Archangel, 123 P.3d at 1194. It was at best coincidental that Miner, or any job applicant to whom Youngquist responded, was in and from Colorado.[2] Youngquist did not specifically recruit Miner or other Colorado residents, its representative did not physically come to Colorado, and it has no physical business location in Colorado. Ultimately, Youngquist did not purposefully avail itself of the benefits and protections of Colorado's laws and does not have sufficient minimum contacts with Colorado for Colorado to exercise personal jurisdiction over it. Therefore, Youngquist cannot constitutionally be subject to the Act. As such, we do not need to reach the second step of the personal jurisdiction analysis of whether or not subjecting Youngquist to personal jurisdiction comported with fair play and substantial justice.[3]

---

[2] Miner attempts to characterize Youngquist as recruiting employees from Colorado to work on its North Dakota oil rigs. However, the record establishes that Youngquist recruits from all over the United States. During the hearing before the ALJ, a Youngquist employee testified that Youngquist hires employees from places where oil and gas industries are prevalent, and he listed Texas, Oklahoma, Indiana, and Colorado as examples. That workers with skills relevant to the oil and gas industry can generally be found in states that have the resources to support that industry is not surprising. This does not constitute evidence that Youngquist actively recruits employees from any particular state.

[3] Nonetheless, we acknowledge that if Youngquist had sufficient minimum contacts with Colorado, it is likely that the "fairness factors" would weigh heavily towards a finding of jurisdiction. Namely, as evidenced by section 8-41-204, Colorado has an interest in providing redress for injured residents and Miner has an obvious interest in obtaining relief.

## D. Minimum Contacts and Workers' Compensation Claims

¶16 Relying on <u>Alaska Packers Ass'n v. Industrial Accident Commission</u>, 294 U.S. 532 (1935), the court of appeals concluded that the above minimum contacts analysis is different for workers' compensation cases because such cases do not require the same extent of contacts as other types of cases. <u>Youngquist</u>, ¶ 25. However, this reliance on <u>Alaska Packers</u> was misplaced—workers' compensation cases require the same constitutional analysis as all other cases.

¶17 In <u>Alaska Packers</u>, the United States Supreme Court upheld an extraterritorial provision in a workers' compensation statute that is similar to section 8-41-204. 294 U.S. at 541. In that case, an employee entered into a written employment contract with the Alaska Packers Association ("Alaska Packers") in San Francisco to work in Alaska for the salmon canning season. <u>Id.</u> at 538. The contract stipulated that the parties were subject to and bound by the Alaska Workmen's Compensation Law. <u>Id.</u> The employee was subsequently injured in Alaska. <u>Id.</u> Upon returning to California, the employee filed a successful workers' compensation claim in California. <u>Id.</u> Even though the parties had agreed to use Alaska's workers' compensation law and the employee was injured in Alaska, the Court upheld the award of California workers' compensation. <u>Id.</u> at 549. The Court concluded that California's extraterritorial provision did not violate due process, even though California was imposing its own laws on an injury sustained in another state. <u>Id.</u> at 541.

¶18 The court of appeals concluded that since the United States Supreme Court held in <u>Alaska Packers</u> that California's extraterritorial provision did not lack a rational basis

9

or involve any arbitrary or unreasonable exercise of state power, similar extraterritorial provisions (like section 8-41-204) are unlikely to violate due process. <u>Youngquist</u>, ¶ 30. However, <u>Alaska Packers</u> is not dispositive of the question before us because the Court assumed the existence of personal jurisdiction in California over Alaska Packers. Indeed, the Court noted that Alaska Packers was "doing business" in California. <u>See</u> <u>Alaska Packers</u>, 294 U.S. at 538. Instead, Alaska Packers was challenging the fact that it was being subjected to California's workers' compensation law even where the relevant contract explicitly dictated that Alaska's workers' compensation law would be binding on an injury suffered in Alaska. <u>Id.</u> at 539. Thus, the case did not involve a dispute about personal jurisdiction, but rather one of due process and full faith and credit.

¶19 Moreover, <u>Alaska Packers</u> was decided ten years before <u>International Shoe</u>, which was the first in a long line of United States Supreme Court cases introducing the now-applicable minimum contacts analysis. Therefore, it is inapposite to rely on <u>Alaska Packers</u> for the proposition that the minimum contacts analysis is somehow different for workers' compensation cases. Ultimately, this court must consider only whether or not there were sufficient minimum contacts under <u>International Shoe</u> and its progeny for Colorado to properly exercise personal jurisdiction over Youngquist for the purposes of Miner's workers' compensation claim.

### III. Conclusion

¶20 For the foregoing reasons, we reverse the judgment of the court of appeals and remand the case to that court with instructions to return the case to the Industrial Claim Appeals Office to vacate its judgment consistent with this opinion.