COLORADO COURT OF APPEALS                                                **2017COA84**

Court of Appeals No. 16CA0126
City and County of Denver District Court No. 15CV32760
Honorable Karen L. Brody, Judge

Gerald Rome, Securities Commissioner for the State of Colorado,

Plaintiff-Appellant,

v.

Antonio Reyes, Craig Kahler, and Betty Schnorenberg,

Defendants-Appellees.

JUDGMENT REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division I
Opinion by JUDGE NAVARRO
Taubman and Graham, JJ., concur

Prior Opinion Announced May 11, 2017, <u>WITHDRAWN</u>

OPINION PREVIOUSLY ANNOUNCED AS "NOT PUBLISHED PURSUANT TO
C.A.R. 35(E)" ON May 11, 2017, IS NOW DESIGNATED FOR PUBLICATION

Announced June 15, 2017

Cynthia H. Coffman, Attorney General, Sueanna P. Johnson, Assistant
Attorney General, Charles J. Kooyman, Assistant Attorney General, Denver,
Colorado, for Plaintiff-Appellant

Foster Graham Milstein & Calisher, LLP, Chip G. Schoneberger, Denver,
Colorado, for Defendants-Appellees

¶ 1     In this civil enforcement action, plaintiff, Gerald Rome, Securities Commissioner for the State of Colorado (the Commissioner), appeals the district court's judgment dismissing the claims against defendants Antonio Reyes, Craig Kahler, and Betty Schnorenberg.  We reverse and remand with directions.

## I.     Factual and Procedural History

¶ 2     Because the court granted defendants' motions to dismiss, we accept as true the following facts alleged in the Commissioner's complaint.  This case arises out of a Ponzi scheme that defrauded at least 255 investors out of $15.25 million dollars.  To implement the scheme, defendant Kelly Schnorenberg formed defendant KJS Marketing, Inc., in Colorado to obtain funds for investment in insurance and financial-products sales companies.  (Neither Kelly Schnorenberg nor KJS is a party to this appeal.)  Kelly Schnorenberg hired Reyes, a California resident, and Kahler, a Wyoming resident, to solicit investor funds on behalf of KJS and its successor company, James Marketing.

¶ 3     Reyes and Kahler represented to potential investors that KJS would direct investment funds to particular companies for the purpose of recruiting and training agents to sell insurance and

financial products, and that the investors would receive ten to twelve percent returns from the ensuing commissions. Reyes and Kahler further represented that the investments were risk free and that prominent individuals in the insurance industry were involved. Reyes and Kahler directed out-of-state investors to Kelly Schnorenberg or KJS in Colorado to complete the transactions. The investors, in exchange for their investments, received promissory notes executed by Kelly Schnorenberg and/or KJS in Colorado and governed by Colorado law.

¶ 4     The investment scheme was a fraud, according to the Commissioner. Instead of directing most funds to the insurance and financial-products sales companies as promised, Kelly Schnorenberg allegedly converted the investments to personal use, or otherwise distributed the funds to his mother, his girlfriend, or prior investors in the attempt to mollify them while bringing in new investors to continue the scheme.[1] Meanwhile, Reyes and Kahler

---

[1] The Commissioner explains the scheme as follows:

> Within approximately one year of starting investments of each of the insurance companies, [Kelly] Schnorenberg, Kahler and/or Reyes would tell investors that the

2

received transaction-based commissions (from Kelly Schnorenberg, KJS, or other Colorado entities) on the sale of the investments.

¶ 5 Seeking to enjoin the scheme, the Commissioner brought claims against Kelly Schnorenberg, Reyes, and Kahler for securities fraud, offer and sale of unregistered securities, and unlicensed sales representative activity. The Commissioner also sought a constructive trust or equitable lien against three "relief defendants" who allegedly received some of the improperly obtained investment funds. Betty Schnorenberg, Kelly's mother, is one such relief defendant. She resides in Wyoming.

¶ 6 Reyes, Kahler, and Betty Schnorenberg moved to dismiss all claims against them under C.R.C.P. 12(b)(2) for lack of personal jurisdiction. Reyes and Kahler also sought dismissal of the

---

company had failed. Schnorenberg, Kahler and/or Reyes would then tell investors about the opportunity to invest in a new insurance sales company, using the same or similar business models. Investors who had invested in the prior insurance sales company and who had not been paid were encouraged to roll their investments into the new company on the same terms. Other investors were rolled into the new insurance sales companies without their knowledge or consent.

securities fraud claim on the ground that it failed to meet the particularity requirements of C.R.C.P. 9(b).[2]  The district court granted all of these motions without conducting an evidentiary hearing.  In written orders, the court concluded that it lacked personal jurisdiction over each of the nonresident defendants, and that the Commissioner's securities fraud claim failed to "link any particular factual allegations to actual false representations" made by Reyes or Kahler.  The court certified these rulings as final under C.R.C.P. 54(b).

## II. Personal Jurisdiction

¶ 7     The Commissioner contends that the district court erred in dismissing the claims against Reyes, Kahler, and Betty Schnorenberg for lack of personal jurisdiction.  We agree.

### A. Rule 12(b)(2) Procedure

¶ 8     In its discretion, a district court may address a Rule 12(b)(2) motion before trial based solely on the documentary evidence or by holding an evidentiary hearing.  *Archangel Diamond Corp. v. Lukoil,*

---

[2] Additionally, Reyes and Kahler sought dismissal under C.R.C.P. 12(b)(5) for failure to state a claim on which relief could be granted. The district court declined to address these requests given its disposition of the other motions.

123 P.3d 1187, 1192 (Colo. 2005). Where, as here, the court decides the motion on the documentary evidence alone, the plaintiff need only demonstrate a prima facie showing of personal jurisdiction to defeat the motion. *Id.*

¶ 9 Documentary evidence consists of the complaint's allegations as well as affidavits and any other written material submitted by the parties. *Id.* The court must accept the complaint's allegations as true to the extent they are not contradicted by the defendant's competent evidence. If the parties' competent evidence presents conflicting facts, the court must resolve such discrepancies in the plaintiff's favor. *Id.*

¶ 10 A prima facie showing exists when the plaintiff raises a reasonable inference that the court has jurisdiction over the defendant. *Id.*; *see also Keefe v. Kirschenbaum & Kirschenbaum, P.C.*, 40 P.3d 1267, 1272 (Colo. 2002). "This is a light burden intended only to 'screen out "cases in which personal jurisdiction is obviously lacking, and those in which the jurisdictional challenge is patently bogus."'" *Found. for Knowledge in Dev. v. Interactive Design Consultants, LLC*, 234 P.3d 673, 677 (Colo. 2010) (citations omitted).

¶ 11 We review de novo whether the plaintiff established a prima facie case of personal jurisdiction. *Id.*

## B. Legal Standard

¶ 12 To exercise jurisdiction over a nonresident defendant, a Colorado court must comply with Colorado's long-arm statute and constitutional due process. § 13-1-124, C.R.S. 2016; *Magill v. Ford Motor Co.*, 2016 CO 57, ¶ 14. Because the long-arm statute extends jurisdiction to the maximum extent allowed by the Due Process Clause, the due process inquiry is controlling. *New Frontier Media, Inc. v. Freeman*, 85 P.3d 611, 613 (Colo. App. 2003).

¶ 13 To permit jurisdiction over a nonresident defendant, due process requires that the defendant have certain minimum contacts with the forum. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). The quantity and nature of the minimum contacts required depends on whether the plaintiff alleges specific or general jurisdiction. *Archangel*, 123 P.3d at 1194. Here, the Commissioner relies on specific jurisdiction.

¶ 14 Specific jurisdiction is properly exercised over a defendant where the injuries triggering litigation arise out of and are related to significant activities directed by the defendant toward the forum

state.  *Id.*; *see Day v. Snowmass Stables, Inc.*, 810 F. Supp. 289, 292 (D. Colo. 1993).  "As such, the minimum contacts inquiry in regard to specific jurisdiction is essentially a two[-]part test assessing, (1) whether the defendant purposefully availed himself of the privilege of conducting business in the forum state, and (2), whether the litigation 'arises out of' the defendant's forum-related contacts."  *Archangel*, 123 P.3d at 1194.  The contacts must be established by the defendant himself.  *Day*, 810 F. Supp. at 292. "The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum state."  *Id.* (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).

¶ 15     Once it is established that a defendant has the requisite minimum contacts, those contacts must be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with notions of fair play and substantial justice (i.e., whether jurisdiction over the defendant would be reasonable).  *Youngquist Bros. Oil & Gas, Inc. v. Miner*, 2017 CO 11, ¶ 13.  These factors may include the burden on the defendant, the forum state's interest in resolving the controversy, and the

plaintiff's interest in attaining effective and convenient relief. *Archangel*, 123 P.3d at 1195. "[A]n especially strong showing of reasonableness may serve to fortify a borderline showing of minimum contacts." *Id.* (citations omitted); *see Keefe*, 40 P.3d at 1271-72. Conversely, when a defendant who purposefully directed his activities at a forum seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable. *Keefe*, 40 P.3d at 1272.

## C. Reyes and Kahler

### 1. The Affidavits

¶ 16 The Commissioner alleged in his complaint that Reyes and Kahler directly solicited investors in Colorado, among other states. Reyes and Kahler submitted affidavits in support of their motions to dismiss in which they denied soliciting investors in Colorado.[3] Though the Commissioner submitted affidavits from his investigator in response, we will accept as true Reyes's and Kahler's assertions on this point. *See Archangel*, 123 P.3d at 1192 ("[T]he allegations in

---

[3] As we will discuss, however, Kahler admitted that he had contacted one Colorado investor via e-mail. Kahler asserted that he made this contact at Kelly Schnorenberg's request.

the complaint must be accepted as true to the extent they are not contradicted by the defendant's competent evidence[.]").[4]

¶ 17    For its part, the district court seemed to disregard entirely the investigator's affidavits addressing Reyes and Kahler. The court found that the investigator's statements were not based on personal knowledge of the facts alleged and, therefore, they did not qualify as "competent evidence." The Commissioner contends that the court erred in that ruling. We need not resolve this dispute, however, because the Commissioner made a prima facie showing of personal jurisdiction over Reyes and Kahler even without considering the investigator's affidavits concerning them. We now turn to that jurisdictional analysis.

## 2.    Jurisdiction Under A Statute

¶ 18    The Commissioner first argues that the Colorado Securities Act (CSA), §§ 11-51-101 to -908, C.R.S. 2016, contemplates personal jurisdiction over Reyes and Kahler. To the extent the

---

[4] We also accept as true the other specific facts asserted in the affidavits of Reyes and Kahler. We do not accept at face value any party's conclusory allegation that defendants did or did not conduct business in Colorado. *See Gognat v. Ellsworth*, 224 P.3d 1039, 1052 (Colo. App. 2009), *aff'd*, 259 P.3d 497 (Colo. 2011); *see also Warne v. Hall*, 2016 CO 50, ¶¶ 9, 27 (recognizing that a court need not accept as true legal conclusions or conclusory allegations).

Commissioner contends that, if he sufficiently alleged that Reyes and Kahler violated the CSA, his allegations against them also satisfied Colorado's long-arm statute, we agree.

¶ 19    According to the long-arm statute, the transaction of business within the state may submit a person to the jurisdiction of the courts of this state. § 13-1-124(1)(a).  According to the CSA, "[a]ny violation of this article shall be deemed to constitute the transaction of business within this state for the purpose of section 13-1-124, C.R.S." § 11-51-706(4), C.R.S. 2016.

¶ 20    The Commissioner alleged that Reyes and Kahler violated the CSA, whether or not they were physically present in Colorado, because the transactions at issue pertained to securities that originated in Colorado.  § 11-51-102(1), C.R.S. 2016 (providing that the relevant CSA provisions "apply to persons who sell or offer to sell when an offer to sell is made in this state or when an offer to purchase is made and accepted in this state"); § 11-51-102(3) (confirming that "an offer to sell or to purchase is made in this state, whether or not either party is then present in this state, when the offer originates from this state").  In support, the Commissioner asserted that the securities at issue — the promissory notes — were

executed in Colorado by a Colorado issuer (Kelly Schnorenberg and/or KJS) for whom Reyes and Kahler were acting as agents.

¶ 21     We assume without deciding that the above allegations create a reasonable inference that Reyes and Kahler violated the CSA.  *Cf. In re Trade Partners, Inc.*, 627 F. Supp. 2d 772 (W.D. Mich. 2008) (stating that allegations that issuer was from Michigan and out-of-state defendants acted as its agents satisfied "originating in" requirement of Michigan Securities Act); *Rosenthal v. Dean Witter Reynolds, Inc.*, 908 P.2d 1095, 1105 (Colo. 1995) (applying an earlier, though substantially similar, version of the CSA to a suit brought by a Pennsylvania resident against an out-of-state broker because the issuer was in Colorado and the offer originated here). Even so, we must still consider whether exercising jurisdiction over Reyes and Kahler satisfies due process.

¶ 22     "The Fourteenth Amendment's due process clause governs the outer boundaries of a state's authority to proceed against nonresident defendants."  *Magill*, ¶ 15.  In fact, "the personal jurisdiction inquiry under Colorado law collapses into the traditional due process inquiry."  *Grynberg Petroleum Co. v. Evergreen Energy Partners, LLC*, 485 F. Supp. 2d 1217, 1222-23 (D.

11

Colo. 2007). So, the question remains: Did the Commissioner make a prima facie showing of the nonresident defendants' minimum contacts with Colorado such that exercising jurisdiction over them comports with due process?

### 3. Minimum Contacts with Colorado

¶ 23 The documentary evidence shows the following facts pertaining to both Reyes and Kahler:

- They solicited investments on behalf of KJS, a Colorado company. That is, Reyes and Kahler repeatedly encouraged investors to send money to Colorado in furtherance of the alleged Ponzi scheme.

- They directed investors to contact Kelly Schnorenberg or KJS in Colorado, where the transactions were finalized.

- They received transaction-based commissions from Colorado accounts pertaining to the investments.

¶ 24 In addition, with respect to Reyes and Kahler individually, the documentary evidence shows:

- Reyes serves as Executive Field Chairman for WealthSmart America (WSA), a Colorado-based company affiliated with the alleged Ponzi scheme. In 2014, he

attended a presentation in Colorado directing investors towards the company.

- Reyes is licensed to sell insurance in Colorado.

- Kahler e-mailed a Colorado-based investor at Kelly Schnorenberg's behest. The purpose of the e-mail (which included an exchange note and financial information on one of the scheme's underlying companies) was to enable the investor to roll over his investment from one failed company into another — in this case, WSA.

¶ 25    Considered in isolation, these contacts with Colorado might not be sufficient to establish specific jurisdiction. For instance, a person is not necessarily subject to Colorado's jurisdiction simply because he entered into a solicitation agreement with a Colorado company. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985); *Gognat v. Ellsworth*, 224 P.3d 1039, 1052 (Colo. App. 2009), *aff'd*, 259 P.3d 497. Nor is jurisdiction sufficiently established by a defendant's simply receiving payment from the forum for work conducted outside of the forum. *Touchtone Grp., LLC v. Rink*, 913 F. Supp. 2d 1063, 1075 (D. Colo. 2012). Similarly, Reyes's serving as an officer for a Colorado company, or Kahler's sending a single e-

mail into Colorado, might not be sufficient to satisfy the minimum contacts inquiry if considered alone. *See In re Terrorist Attacks on Sept. 11, 2001*, 740 F. Supp. 2d 494, 506 (S.D.N.Y. 2010) (officer), *aff'd*, 714 F.3d 118 (2d Cir. 2013); *Keefe*, 40 P.3d at 1271 (single contact).

¶ 26 But we cannot divide and conquer. We cannot isolate each individual contact when assessing whether the Commissioner has raised a reasonable inference of jurisdiction over these defendants. Instead, we consider the contacts in their totality. *See Calder v. Jones*, 465 U.S. 783, 789 (1984).

¶ 27 For example, in *Foundation for Knowledge*, our supreme court acknowledged that the nonresident defendant's contractual relationship with a Colorado company, standing alone, was insufficient to establish personal jurisdiction. 234 P.3d at 680. Still, the court decided that the defendant's additional contacts with Colorado established jurisdiction, including the facts that the agreement required others (not the defendant) to perform significant work in Colorado, the defendant extensively communicated with the Colorado company's representatives while they were in Colorado, and the defendant was required to send parts of the project to

Colorado for approval. *See id.* Rejecting "the notion that an absence of physical contacts can defeat personal jurisdiction," the supreme court concluded that the nonresident defendant's contacts with Colorado were not "'random, fortuitous, or attenuated' in nature" but instead sufficiently established that he purposely availed himself of the privilege of conducting business in Colorado. *Id.* at 680-81 (citations omitted).

¶ 28    Likewise, in *Greenway Nutrients, Inc. v. Blackburn*, 33 F. Supp. 3d 1224, 1238 (D. Colo. 2014), the court found personal jurisdiction over a foreign defendant where an agreement created a relationship between the defendant and the Colorado plaintiff, *and* the defendant purchased "product" outside of Colorado for the plaintiff in furtherance of their relationship. The court explained that the defendant's purchase of product for the plaintiff's benefit was "an activity directed at a resident of Colorado." *Id.*

¶ 29    Likewise, the documentary evidence here shows that Reyes and Kahler each entered into an ongoing relationship with a Colorado-based company on whose behalf they solicited out-of-state investors through alleged misrepresentations. Reyes and Kahler each furthered the relationship by actively directing the unwitting

15

investors to Colorado, whereupon Reyes and Kahler received commissions from Colorado accounts based on the ensuing transactions. Furthermore, Reyes acted as an officer for a Colorado company associated with the scheme (WSA), and Kahler admitted contacting at least one Colorado investor with information to further the alleged scheme.

¶ 30 The above contacts were among those that triggered the Commissioner's litigation under the CSA; the contacts supported the alleged Ponzi scheme that purportedly harmed the Colorado securities market. Thus, when viewing defendants' contacts as a whole, we discern a prima facie showing that Reyes and Kahler purposefully availed themselves of the privilege of conducting business in Colorado with Colorado residents (Kelly Schnorenberg and the Colorado companies associated with the alleged scheme). *See Found. for Knowledge*, 234 P.3d at 680-81.

¶ 31 Indeed, the prima facie showing is particularly strong with respect to Reyes, given his involvement with WSA, a Colorado

company.[5]  To reiterate, the scheme at issue rested on the acquisition of investors' funds solicited through misrepresentations. The thrust of the misrepresentations was that the investments would be directed to particular companies to generate profit, including WSA.  These companies, however, never received sufficient funds to generate the promised return.  Hence, Reyes allegedly solicited investments for the scheme while acting as an officer for one of the Colorado companies involved in the scheme.

¶ 32    These allegations against Reyes raise a reasonable inference that he may have been a primary participant in the scheme involving WSA.  "[W]here individual officers and directors are primary participants in the wrongdoing giving rise to the court's jurisdiction over the corporation, they are subject to jurisdiction in the forum state."  *Scott v. Gurusamy*, No. 16-CV-02961-RM-MEH, 2017 WL 590291, at *4 (D. Colo. Feb. 14, 2017); *see also Application to Enforce Admin. Subpoenas Duces Tecum of Sec. Exch. Comm'n v. Knowles*, 87 F.3d 413, 418 (10th Cir. 1996) ("[E]mployees of a corporation that is subject to the personal

[5] The Commissioner alleged that Reyes acted as an officer for several of the companies involved in the scheme.  In his affidavit, Reyes concedes that he is an officer of WSA.

17

jurisdiction of the courts of the forum may themselves be subject to jurisdiction if those employees were primary participants in the activities forming the basis of jurisdiction over the corporation.").

¶ 33 In sum, taking the allegations together, the activities of both Reyes and Kahler rendered it reasonably foreseeable that they could be haled into a Colorado court to answer the allegations of fraud, sale of unregistered securities, and unlicensed sales representative activity affecting the Colorado investment market. After all, the Commissioner's burden to show a prima facie case of jurisdiction is "light" because the prima facie showing is merely intended to screen out cases in which personal jurisdiction is obviously lacking. *Found. for Knowledge*, 234 P.3d at 677. And, even if the showing of minimum contacts here were considered "borderline," the strong showing of reasonableness discussed below "serve[s] to fortify" the contacts. *Archangel*, 123 P.3d at 1195 (citation omitted).

4. Reasonableness

¶ 34 Colorado's exercise of personal jurisdiction over Reyes and Kahler comports with notions of fair play and substantial justice. "This determination is essentially one of reasonableness." *Found. for Knowledge*, 234 P.3d at 682.

¶ 35    First, Colorado has a compelling interest in resolving the harms caused by the alleged Colorado-based Ponzi scheme, including those caused by Reyes's and Kahler's solicitations of investments to further the scheme. *See* § 11-51-101(2) ("The purposes of [the CSA] are to protect investors and maintain public confidence in securities markets[.]"). Second, the Commissioner can file suit only in Denver District Court. § 11-51-602, C.R.S. 2016. Therefore, jurisdiction over Reyes and Kahler in Colorado is necessary if the Commissioner is to address and to obtain a remedy for the harms that Reyes and Kahler allegedly caused Colorado markets through their active and repeated participation in the scheme. Third, defendants do not argue that exercising jurisdiction over them in Colorado would create an unreasonable burden, and we discern no basis for such a conclusion.

¶ 36    As a result, the exercise of jurisdiction over Reyes and Kahler in Colorado does not offend due process principles.[6]

---

[6] Of course, a finding that a plaintiff has made a prima facie showing of personal jurisdiction does not preclude the district court from subsequently requiring the plaintiff to establish personal jurisdiction by a preponderance of the evidence, either at an evidentiary hearing before trial or by the close of trial. *Archangel Diamond Corp. v. Lukoil,* 123 P.3d 1187, 1192 n.3 (Colo. 2005).

## D.    Betty Schnorenberg

### 1.    Minimum Contacts with Colorado

¶ 37    According to the complaint, Betty Schnorenberg is a resident of Wyoming; she received funds from her son (Kelly), transferred from Colorado accounts; and she knew or should have known that the money came from investors in her son's "Colorado-based investment scheme."  As a "relief defendant," she is not accused of violating any substantive law but is part of this case only as an alleged holder of assets that must be recovered in order to afford complete relief.  *See Fed. Trade Comm'n v. Johnson*, No. 2:10-cv-02203-MMD-GWF, 2013 WL 2460359, at *6 (D. Nev. June 6, 2013) (citing *Commodity Futures Trading Comm'n v. Kimberlynn Creek Ranch, Inc.*, 276 F.3d 187, 192 (4th Cir. 2002)).

¶ 38    Betty Schnorenberg, in her affidavit, admitted receiving $604,924.21 from her son.  She claimed that she had used this money to pay down $634,077.86 in credit-card debt incurred by her son on her cards from January 2014 through May 2015.  She asserted that she had allowed him to use her credit cards to incur charges for what she understood to be "his business activities."  The affidavit of the Commissioner's investigator identified an additional

20

$578,006 that Betty Schnorenberg had allegedly received from her son between January 2009 and December 2013. The investigator asserted that this money came from accounts controlled by her son "that were funded 99.99% by investors" in the underlying scheme.

¶ 39 Betty Schnorenberg's contacts with Colorado were arguably fewer than those of Reyes and Kahler. However, "[i]n some circumstances, even a single act may subject a defendant to jurisdiction, where that act creates a substantial connection between the defendant and the forum state." *In re Marriage of Malwitz,* 99 P.3d 56, 61 (Colo. 2004).

¶ 40 Where a defendant's contacts are few, a three-part test applies. First, the defendant must purposefully avail herself of the privilege of acting in the forum state *or of causing important consequences* in that state. *Id.* Second, the cause of action must arise from the consequences in the forum state of the defendant's activities. *Id.* Finally, the defendant's activities or the consequences of those activities must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable. *Id.*

¶ 41    For instance, our supreme court held that a defendant had

established minimum contacts with Colorado because his abuse

and harassment had caused his wife to move here, where she and

her daughter received public assistance from the state (an

"important consequence"). *Id.* at 62-64. Because the defendant

should have expected his wife to flee to Colorado to join her family

and he caused important consequences here, he created a

substantial connection between himself and Colorado. *Id.* at 63-64.

¶ 42    Also illustrative is *First Horizon Merchant Services, Inc. v.*

*Wellspring Capital Management, LLC*, 166 P.3d 166 (Colo. App.

2007). There, a division of this court considered a defendant who

had participated in three or four phone calls with people in

Colorado, including a conference call where he apparently said

nothing significant. *Id.* at 176. The plaintiff asserted that the

defendant had engaged in fraudulent concealment because he had

a duty to speak up during the conference call to correct another

person's material omissions. *Id.* The division concluded that the

defendant's activity, "although limited, was sufficient to create a

reasonable inference that he purposefully availed himself of the

privilege of acting in Colorado or of *causing important consequences in Colorado.*" *Id.* (emphasis added).

¶ 43    Here, Betty Schnorenberg allegedly engaged in multiple financial transactions with her Colorado son that were substantial in amount and that extended over a relatively significant period. According to the documentary evidence, she may have provided considerable money to finance — and she may have received considerable money from — the Colorado-based Ponzi scheme at issue. *See* § 13-1-124(1)(a) (transacting business in Colorado may submit a person to Colorado's jurisdiction). The complaint alleges that this scheme, including Betty Schnorenberg's taking money from it, caused important consequences in Colorado (e.g., the victims' losses). *Cf. Malwitz*, 99 P.3d at 63; *First Horizon Merchant Servs.*, 166 P.3d at 176.[7]

¶ 44    Therefore, the Commissioner's action against Betty Schnorenberg arises from her activities' consequences in Colorado. *See Malwitz*, 99 P.3d at 62. Finally, as with Reyes and Kahler, the strong showing that Colorado's exercise of jurisdiction over Betty

---

[7] At this point in the proceedings, we must accept as true the Commissioner's allegation that she might still possess some of the allegedly ill-gotten funds.

Schnorenberg would be reasonable (discussed below) fortifies her fairly limited contacts with Colorado. *See Archangel*, 123 P.3d at 1195.

2. Reasonableness

¶ 45 As discussed, Colorado has a compelling interest in resolving the harms caused by the alleged Ponzi scheme, including those caused by Betty Schnorenberg's possible financing of and receipt of proceeds from the scheme. Because the Commissioner can file suit only in Denver District Court, Colorado's jurisdiction over her is necessary if the Commissioner is to address and to obtain a full remedy for the Ponzi scheme's harms.

¶ 46 Furthermore, Betty Schnorenberg does not contend that exercising jurisdiction over her in Colorado would unreasonably burden her. And we do not perceive such a burden. The Commissioner does not assert a cause of action against her that she would have to defend on the merits. *See Kimberlynn Creek Ranch*, 276 F.3d at 192. Instead, the equitable relief sought against her depends entirely on the Commissioner's first proving his claims against the merits defendants. *See id.* (recognizing that a relief, or

nominal, defendant is joined purely as a means to facilitate collection).

¶ 47 The above considerations, "taken together, amply demonstrate the reasonableness of exercising jurisdiction over [Betty Schnorenberg], despite the somewhat limited nature of [her] direct contacts with Colorado." *Malwitz*, 99 P.3d at 63. We therefore reverse the dismissal of Betty Schnorenberg from this case.

### III. Heightened Pleading under Rule 9(b)

¶ 48 The district court dismissed the claims against Reyes and Kahler "under section 501 of the Colorado Securities Act" on the ground that the Commissioner had "not met [his] pleading burden under Rule 9(b)." The Commissioner says this ruling was erroneous, and we agree.

### A. Standard of Review and Relevant Law

¶ 49 The parties agree that Rule 9(b)'s heightened pleading standard applies to the Commissioner's claim for securities fraud asserted under section 11-51-501(1)(a)-(c), C.R.S. 2016. We review de novo the dismissal of a fraud action for failing to satisfy this standard. *Scott Sys., Inc. v. Scott*, 996 P.2d 775, 780 (Colo. App. 2000); *see also Grossman v. Novell, Inc.*, 120 F.3d 1112, 1118 n.5

(10th Cir. 1997); *State Farm Mut. Auto. Ins. Co. v. Parrish*, 899 P.2d 285, 288 (Colo. App. 1994) (case law interpreting an analogous federal rule may be persuasive in analyzing the Colorado rule).

¶ 50 Rule 9(b) requires that, in all averments of fraud, the circumstances constituting fraud shall be stated with particularity.

> While a plaintiff need not plead all of the evidence that may be presented to prove the claim of fraud, the complaint must at least state the main facts or incidents which constitute the fraud so that the defendant is provided with sufficient information to frame a responsive pleading and defend against the claim.

*Parrish*, 899 P.2d at 289 (citation omitted).

## B.  Application

¶ 51 In support of the claim for securities fraud, the Commissioner alleged that Reyes and Kahler — along with Kelly Schnorenberg — solicited investors on behalf of KJS to invest between $10,000 and $50,000 each for investments in a series of companies: Salus Marketing Enterprises, LLC; Premier Advantage Insurance Agency, LLC; Hegemon Holdings, LLC; Quantum Success Strategies, LLC; and WSA.  During their respective solicitations, all of these defendants represented that

26

- the investment funds would be used exclusively to invest in insurance sales companies;

- returns of ten to twelve percent would be paid to investors from commissions on the sales of insurance and financial products;

- investors would be provided with quarterly and annual financial statements of KJS; and

- the investments were risk free.

According to the Commissioner, however, the majority of the investment funds were instead converted to Kelly Schnorenberg's personal use or directed to his family and friends, leaving investors with no principal, much less profit.

¶ 52    The Commissioner further alleged that all of the defendants failed to disclose certain risks associated with the investments. For instance,

- Kelly Schnorenberg was subject to two prior permanent injunctions under the CSA relevant to the investment scheme;

- new investment money was being used to make interest payments to existing investors;

- prior insurance companies involved in the scheme had failed without paying any returns to investors; and

- Kelly Schnorenberg and KJS owed prior investors millions of dollars relating to investments in similar insurance sales companies.

¶ 53    Reyes and Kahler argue that these allegations fail to meet the pleading standards under Rule 9(b) because they are broadly directed at "the Defendants" and do not allege specific conduct by each individual.  On the contrary, the alleged misrepresentations and omissions are not based merely on collective action committed by an undifferentiated group.  Rather, we construe the Commissioner's complaint as alleging that each merits defendant (including Reyes and Kahler) made the aforementioned misstatements or omissions while soliciting his potential investors under the scheme.  Bolstering this reading of the complaint is the Commissioner's identification of a particular solicitation that each defendant made individually, which was "typical of the conduct engaged in by the Defendants with other investors."

¶ 54    For example, Reyes recruited A.T., a California resident, in 2012 and directed him to Kelly Schnorenberg.  As for Kahler, he

28

approached M.S., an Illinois resident, and told him that the insurance company was going to be a "big hit" and "claimed that investment was growing quickly." Kahler did not, however, provide M.S. with relevant written materials, disclose the risks, or disclose the other material information about regulatory and legal actions involving Kelly Schnorenberg.

¶ 55 Because the allegations are directed toward each individual defendant (rather than only toward defendants as a group), the cases cited by defendants and the district court are not particularly useful, in our view.[8] More on point is *State ex rel. Suthers v. Mandatory Poster Agency, Inc.*, 260 P.3d 9 (Colo. App. 2009).

---

[8] *Koch v. Koch Indus., Inc.*, 203 F.3d 1202 (10th Cir. 2000) (finding a claim insufficient because the complaint failed to identify any specific defendant who made the fraudulent misrepresentations or omissions where a number of individual defendants were involved); *Zerman v. Ball*, 735 F.2d 15 (2d Cir. 1984) (dismissing the claims as to individual defendants where the complaint did not assert that either made any statement to the plaintiff or had contact with her); *Amerson v. Chase Home Fin. LLC*, No. 11-CV-01041-WJM-MEH, 2012 WL 1686168 (D. Colo. May 7, 2012) (dismissing claim where plaintiff failed to identify who mailed the fraudulent letter at issue); *Fisher v. APP Pharm., LLC*, 783 F. Supp. 2d 424 (S.D.N.Y. 2011) (plaintiff failed to differentiate among the named defendants in each allegation and thus failed to inform each defendant of the circumstances surrounding the fraudulent contact with which he individually stood charged).

¶ 56 In that case, the State asserted a Colorado Consumer Protection Act (CCPA) claim for deceptive trade practices against multiple defendants. The complaint identified each defendant individually and then alleged that the "defendants" violated the CCPA because the defendants' solicitations deceived "consumers" in particular ways regarding the geographic origin of the defendants' goods. *See id.* at 13. In other words, the complaint did not separately allege that each defendant had committed a particular deceptive act or had deceived a particular consumer. Yet, a division of this court held that the allegations were sufficiently particular to satisfy Rule 9(b). *Id. Mandatory Poster Agency* is particularly relevant because, like the Commissioner's claims here, it addressed the State's law enforcement action against multiple defendants involving multiple victims — unlike the cases cited by defendants and the district court involving disputes between private parties.

¶ 57 Reyes and Kahler also claim that the Commissioner's allegations failed to identify any specific, fraudulent behavior they committed against any investor individually. Again, we disagree. The Commissioner set forth specific statements made to investors, as well as failures to disclose, that are relevant to a claim for relief

30

under section 11-51-501 of the CSA.  According to the complaint, the statements were unlawful because they reflected a device, scheme, or artifice to defraud, while the alleged omissions constituted material facts necessary to make the statements not misleading.  As noted, the Commissioner identified particular investors solicited by Reyes and by Kahler personally.  And, as *Mandatory Poster Agency* illustrates, the complaint need not identify every victim of a defendant's fraudulent activities in order to survive a motion to dismiss for failure to comply with Rule 9(b).  *See also Parrish*, 899 P.2d at 289 ("[A] plaintiff need not plead all of the evidence that may be presented to prove the claim of fraud[.]").[9]

¶ 58    Consequently, the Commissioner's complaint provides sufficient particularity to afford Reyes and Kahler fair notice of the claim for securities fraud and the main facts or incidents upon which it is based.  We reverse the dismissal of the fraud claim against Reyes and Kahler.

---

[9] A motion to dismiss for failure to comply with C.R.C.P. 9(b) is generally treated as a motion to dismiss for failure to state a claim on which relief can be granted.  *Cf. Seattle-First Nat'l Bank v. Carlstedt*, 800 F.2d 1008, 1011 (10th Cir. 1986).

## IV.     Conclusion

¶ 59     The judgment is reversed.  The matter is remanded to the district court for further proceedings consistent with this opinion.

JUDGE TAUBMAN and JUDGE GRAHAM concur.