24CA1164 Brown v Dillon Companies 07-31-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA1164
Jefferson County District Court No. 23CV30404
Honorable Christopher C. Zenisek, Judge

Jadwiga Brown,

Plaintiff-Appellee,

v.

Dillon Companies, LLC, d/b/a King Soopers,

Defendant-Appellant.

JUDGMENT AFFIRMED

Division V
Opinion by JUDGE BERGER*
Welling and Taubman*, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced July 31, 2025

Ross Ziev, P.C., Ross Ziev, Greenwood Village, Colorado, for Plaintiff-Appellee

Nathan Dumm & Mayer, P.C., Michael R. Lancto, Daniel A. Jacobs, Denver, Colorado, for Defendant-Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2024.

¶ 1    Defendant, Dillon Companies, LLC, appeals the judgment in favor of plaintiff, Jadwiga Brown.[1]  King Soopers contends that the district court erred when it (1) refused to instruct the jury on Colorado Jury Instruction-Civil (CJI-Civ.) 8:8 (2025), which defines when an employee is acting within the scope of employment; and (2) prohibited King Soopers' medical expert from referring to the dollar amount of medical care provided to Brown.  We conclude that (1) any error committed by the district court in refusing to give CJI-Civ. 8:8 was harmless, and (2) the district court did not err by excluding King Soopers' medical expert's testimony about the cost of Brown's medical care.  Therefore, we affirm the judgment.

## I.    Background

¶ 2    On December 22, 2021, Brown was shopping at a King Soopers store when she slipped and fell on what she believed to be yogurt spilled on the floor.  She did not see the substance before she fell but noticed a white substance on her boots, right elbow, and right knee afterward.  Brown suffered a torn meniscus as a

---

[1] Dillon Companies, LLC operates the King Soopers store where the events in question occurred.  We refer to the defendant as "King Soopers."

result of the fall and received treatment from at least two medical providers.

¶ 3     Video evidence presented at trial depicted a person wearing a black apron and a King Soopers name tag carry a product through the store. While carrying this product, this person apparently dropped an item on the floor in the same location as Brown's fall, minutes before Brown slipped.

¶ 4     King Soopers admitted at trial that its employees remove expired and otherwise unsaleable merchandise on a regular basis. Other video evidence depicted employees stocking that area around the same time as the spill.

¶ 5     Barbara Galvery, then King Soopers' assistant store manager, learned of Brown's fall the day it happened. While King Soopers' policy is to photograph any spill that causes an injury, that was not done in this case. Nor did King Soopers search for additional video evidence at or about the time of Brown's fall to further identify the person who created the spill. Galvery testified that the person

believed to have created the spill was an "associate" of King Soopers (but she was unable to further identify the individual).[2]

¶ 6      Brown sued King Soopers under Colorado's Premises Liability Act (PLA). The parties do not dispute that Brown was an invitee under the PLA. Brown initially sought to recover economic damages (e.g., medical care costs), noneconomic damages, and damages for physical impairment and disfigurement, but shortly before trial she decided not to pursue economic damages.[3]

¶ 7      The jury awarded Brown $300,000 in noneconomic damages and $50,000 for physical impairment losses or disfigurement injuries, for a total judgment of $350,000.

---

[2] King Soopers uses the term "associate" to describe its store employees.

[3] In its briefing, King Soopers complains about the late withdrawal of the claim of economic damages but, so far as we can tell, does not contend that the district court should have done anything other than respect that withdrawal. We also note that King Soopers did not request a continuance of the trial in view of the claimed late withdrawal of the claim of economic damages. In the absence of any developed claim regarding the withdrawal of the claim for economic damages, we do not further address it.

## II.     Jury Instruction CJI-Civ. 8:8

¶ 8     King Soopers makes two arguments on appeal.  First, it argues that the district court erred when it refused to give jury instruction CJI-Civ. 8:8.  We reject this contention.

### A.     Standard of Review and Applicable Law

¶ 9     "We review jury instructions de novo to determine whether the instructions as a whole accurately informed the jury of the governing law." *Lombard v. Colo. Outdoor Educ. Ctr., Inc.*, 266 P.3d 412, 418 (Colo. App. 2011).  "As long as the instruction properly informs the jury of the law, a trial court has broad discretion to determine the form and style of the instructions." *Hendricks v. Allied Waste Transp., Inc.*, 2012 COA 88, ¶ 15.

¶ 10     We review a district court's refusal to give a particular jury instruction for an abuse of discretion.  *Walker v. Ford Motor Co.*, 2017 CO 102, ¶ 9.  A court abuses its discretion when its ruling is manifestly arbitrary, unreasonable, or unfair or it misapplies the law.  *Nibert v. Geico Cas. Co.*, 2017 COA 23, ¶ 8.

¶ 11     We review preserved instruction errors under the harmless error standard.  *In re Estate of Chavez,* 2022 COA 89M, ¶ 22.  A court errs if it rejects "a tendered instruction that properly instructs

4

the jury on the applicable law in the case and the evidence at issue, which are not adequately covered elsewhere." *Nibert*, ¶ 9. But absent a showing of substantial, prejudicial error, we will not reverse the judgment. *Vista Resorts, Inc. v. Goodyear Tire & Rubber Co.*, 117 P.3d 60, 70 (Colo. App. 2004). "Prejudicial error exists when the record shows that a jury might have reached a different verdict if a proper instruction had been given." *Schuessler v. Wolter*, 2012 COA 86, ¶ 11. "However, it is not error for a trial court to reject a party's instruction when that instruction misstates the law, is argumentative, improperly emphasizes specific evidence, or when the court allows the party to otherwise argue its theory of the case." *Nibert*, ¶ 9.

## B. Any Error by the District Court in Not Instructing the Jury on the Definition of Scope of Employment Was Harmless

¶ 12 King Soopers argues it was entitled to a CJI-Civ. 8:8 instruction and that the court erred when it refused to give the instruction.

¶ 13 The CJI-Civ. Committee's notes on the use of CJI-Civ. 8:8 provide that this instruction is appropriate in respondeat superior claims. The only claim tried in this case was a claim under the

5

PLA; no respondeat superior claim was asserted. We cannot fault the district court for refusing to give an instruction that the notes on the use of CJI-Civ. 8:8 themselves say was not appropriate in this case.

¶ 14     That, of course, does not necessarily decide the question of whether, apart from CJI-Civ. 8:8, the court had a duty to instruct the jury on the meaning of the term "scope of employment," a term contained in an instruction that *was* given to the jury.

¶ 15     Assuming without deciding that the district court erred in that regard, we conclude that any error was harmless.[4] "Put another way, even if the jury had been given a correct instruction, . . . we conclude that the jury would probably have reached the same verdicts." *Harris Grp., Inc. v. Robinson*, 209 P.3d 1188, 1200 (Colo. App. 2009); *see also Cissell Mfg. Co. v. Park*, 36 P.3d 85, 89 (Colo. App. 2001) ("However, we are convinced that, even if the jury had been instructed properly, the verdict against Park would have been the same. Thus, the errors were harmless.").

---

[4] The reasons why any error was harmless also support a determination that an instruction on scope of employment was unnecessary.

¶ 16    The jury was instructed under CJI-Civ. 7:7 (2025) that "[a]ny act or omission of [King Soopers'] employees while acting within the *scope of his or her employment* is the act or omission of [King Soopers]." (Emphasis added.) But the jury was not instructed on the legal meaning of the "scope of his or her employment."

¶ 17    Uncontroverted video evidence showed that the person who allegedly created the spill was wearing a black apron and white name tag.[5] It is undisputed that that attire is the garb of King Soopers associates or employees. Video evidence submitted at trial showed other King Soopers employees wearing the same garb stocking items around the area of the spill that same day.

¶ 18    King Soopers acknowledges that the person depicted in the video was "wearing similar garb to [that of] an employee." But King Soopers speculates that even if the person depicted was a King Soopers employee, no evidence showed that the person was acting

---

[5] Brown presented an alternate theory of liability that was supported by video evidence: an unknown person spilled the substance, but the spill was seen (or should have been seen) by two King Soopers employees passing by the area of the spill, who did nothing to mitigate the hazard. Because the jury returned a general verdict, it is impossible to know on what evidence the jury relied. Our job is only to determine if the record supports the verdict reached by the jury, not to speculate on what evidence it relied.

in the scope of her authority when she allegedly dropped the substance on the floor (and then failed to clean it up).  Of course, virtually anything is possible, but when there is video evidence of a person wearing King Soopers garb dropping a substance on the floor of the store at the precise location where a customer slipped and fell, the chances that the employee was acting outside of the scope of her employment is both speculative and far-fetched.

¶ 19    Applying the controlling legal standard, we have no reasonable basis to believe that the jury might have reached a different result if it had been given a definition of "scope of employment."  *See Pham v. OSP Consultants, Inc.*, 992 P.2d 657, 658–59 (Colo. App. 1999) (Scope of employment "is determined by the purpose of the employee's act, rather than the method of performance.  Thus, if the negligent act or omission was in the service of the employer's business, the employer is liable, even though the employer did not authorize the manner of performance.").

¶ 20    Nor did the district court prohibit King Soopers' counsel from arguing its theory to the jury.  *Schuessler,* ¶ 11; *Nibert,* ¶ 9.  Therefore, we conclude that any error in declining to instruct the

jury on the meaning of the phrase "scope of employment" was harmless.

### III. Exclusion of Evidence of Brown's Medical Care Costs

¶ 21    King Soopers next contends that the district court erred when it prohibited its medical expert from relying on or testifying about the relatively small amount of Brown's medical expenses. Again, we disagree.

### A. Standard of Review and Applicable Law

¶ 22    "We review evidentiary rulings, including a ruling on the admissibility of expert testimony, for an abuse of discretion." *Dorsey & Whitney LLP v. RegScan, Inc.*, 2018 COA 21, ¶ 39. We give deference to the court's ruling on the admissibility of expert testimony because the district court has a superior opportunity to evaluate the competence of the expert and assess whether the expert's opinion would be helpful to the jury. *City of Aurora v. Colo. State Eng'r*, 105 P.3d 595, 612 (Colo. 2005). We will overturn its decision only when it is manifestly erroneous. *Id.*

¶ 23    We review a preserved claim of evidentiary error for harmless error and will only reverse if the error "substantially influenced the

9

outcome of the case." *Genova v. Longs Peak Emergency Physicians, P.C.*, 72 P.3d 454, 459 (Colo. App. 2003).

### B. Preservation and Invited Error

¶ 24 At the outset, the parties disagree whether King Soopers preserved this issue. Brown also alleges that the doctrine of invited error precludes appellate review. We conclude that the issue is preserved and that the doctrine of invited error is inapplicable.

¶ 25 The issue presented on appeal is whether the costs of Brown's medical care were "otherwise inadmissible" under CRE 703. This argument was preserved because King Soopers adequately brought this question to the district court's attention and the court ruled on the question. *See Battle N., LLC v. Sensible Hous. Co.*, 2015 COA 83, ¶ 13 ("[W]here issue was brought to the district court's attention and the court ruled on it, it was preserved for appellate review; no talismanic language is required to preserve an issue." (citing *Target Corp. v. Prestige Maint. USA, Ltd.*, 2013 COA 12, ¶ 23)). Thus, the claimed error was sufficiently preserved for our review.

¶ 26 The invited error doctrine is inapplicable here. "[I]nvited error prevents a party from complaining on appeal of an error that he or she has invited or injected into the case." *Bernache v. Brown*, 2020

COA 106, ¶ 11.  Invited error applies when a party (1) expressly acquiesces in a proposed action by the court or the opposing party; (2) implicitly agrees with a trial court's rejection of the party's own tendered instruction; or (3) expressly declines a trial court's offer to replace a juror with an alternate juror.  *McGill v. DIA Airport Parking, LLC*, 2016 COA 165, ¶ 10.  Because King Soopers did not invite, inject, or induce the ruling that it seeks to challenge on appeal, the doctrine of invited error does not apply here.

    C. Evidence was "Otherwise Inadmissible"

¶ 27 King Soopers' argument turns on the meaning of CRE 703, which governs expert testimony.  The rule permits an expert to rely on information normally relied on by an expert in the field even though that information may not be admissible under the rules of evidence.  But the rule also contains a significant limitation on that general rule.  It provides that the "[f]acts or data that are *otherwise inadmissible* shall not be disclosed to the jury by the proponent of the opinion or inference unless the court determines that their probative value in assisting the jury to evaluate the expert's opinion *substantially outweighs their prejudicial effect.*"  CRE 703 (emphasis added).

¶ 28    In lay terms, an expert may rely on information not admitted in evidence (or admissible) if an expert of that type would ordinarily rely on such information. But facts or data that are otherwise inadmissible cannot be disclosed to the jury until the court performs the balancing test prescribed by the rule.

¶ 29    King Soopers wanted its expert, Dr. Alison Fall, to testify about the limited costs of Brown's medical care arising from her fall at the King Soopers. The only apparent purpose of that testimony would be to support Dr. Fall's central opinion that most of the damages claimed by Brown were not caused by her fall at the King Soopers.[6]

¶ 30    Dr. Fall offered opinions on whether the treatments Brown received for her injuries were "medically reasonable, necessary, and causally related to the injuries sustained." The cost of her medical care would, of course, have been directly relevant if Brown had proceeded to trial on a claim of economic damages. But, as noted above, she did not.

---

[6] King Soopers failed to make an adequate offer of proof regarding the proposed testimony, and we could reject King Soopers' claim of error on that ground alone. But we exercise our discretion to address and reject the merits of King Soopers' argument. *Maloney v. Brassfield*, 251 P.3d 1097, 1105 (Colo. App. 2010).

12

¶ 31    So, as the case was tried, the only relevance of the cost of medical care that we can perceive was that it bore upon the amount of *noneconomic damages* that were claimed (and awarded by the jury).

¶ 32    While there is no definitive precedent on this question in Colorado, we have found at least one jurisdiction that excludes medical costs when the plaintiff seeks noneconomic damages. *See Martin v. Soblotney*, 466 A.2d 1022, 1025 (Pa. 1983) ("Thus the fact that a particular amount of money was expended to treat an injury bears no logical correlation to the degree of pain and suffering which accompanied the injury to the plaintiff in question . . . ."). But we need not weigh in on this question because we conclude that the district court correctly applied the CRE 703 balancing test and did not abuse its discretion in its ruling.

¶ 33    Dr. Fall was the last witness to testify in the case. Neither Brown nor King Soopers made any effort to admit Brown's medical bills through an appropriate witness prior to Dr. Fall's testimony. As a result, we conclude that the direct court correctly ruled that the costs of care were "otherwise inadmissible" through the testimony of Dr. Fall.

¶ 34  Clearly the amount of medical costs was hearsay. And, on this record, we are not convinced that merely because the medical costs may have been admitted under a hearsay exception means that the records were not "otherwise inadmissible."

¶ 35  King Soopers argues that the medical costs were admissible for two reasons. First, it contends that "[t]here is no legitimate dispute that Plaintiff's own disclosed medical billing for her claimed injuries could have been admitted at trial for a proper substantive purpose by the time Dr. Fall testified." But King Soopers does not explain what that "proper purpose" might have been.

¶ 36  Instead, King Soopers argues that the evidence should have been allowed so the "jury [could] have critical evidence needed to evaluate the credibility and weight the jury should give to Dr. Fall's sharply disputed opinions within her testimony." As best as we can tell, King Soopers appears to contend that the limited amount of medical bills would have impeached the amount of Brown's claimed noneconomic damages.

¶ 37  King Soopers relies on *Dorsey & Whitney LLP* to support its position that the district court erred by applying Rule 703's balancing test. In *Dorsey & Whitney LLP*, a division of this court

14

held that "otherwise inadmissible" under CRE 703 "refers to information that *can't* be admitted under the rules of evidence, not facts or data that simply *haven't been* admitted." *Dorsey & Whitney LLP*, ¶ 42.

¶ 38    But *Dorsey & Whitney LLP* is factually distinguishable because King Soopers waited until Dr. Fall, the last witness at trial, to try to admit evidence that was hearsay through a witness who clearly was incompetent to testify regarding the records. As the district court recognized, Dr. Fall was not a billing expert and obtained the medical costs contained in her report from hearsay documents. She lacked the proper foundation for the evidence to be admitted through her. King Soopers also failed to attempt to call another witness or admit additional exhibits that would have made the medical costs admissible.

¶ 39    Because Dr. Fall was the last trial witness, we conclude that in the posture presented, Brown's medical costs were evidence that was "otherwise inadmissible" within the meaning of Rule 703.

¶ 40    We thus conclude that the district court properly applied the balancing test contained in CRE 703.

## D. The District Court Did Not Abuse Its Discretion in Determining That the Probative Value of the Medical Costs Did Not Substantially Outweigh Their Prejudicial Effect

¶ 41    Under CRE 703, evidence that is "otherwise inadmissible" may be admitted, but only if the district court finds that its "probative value . . . substantially outweighs [its] prejudicial effect."

¶ 42    The district court found that the medical costs' probative value did not substantially outweigh their prejudicial effect because, while there was only a small risk of prejudice, the evidence reflecting medical costs was not a "central component of the doctor's analysis in terms of formulating her opinion of whether [Brown's medical treatment was] reasonable care or not."  And because Brown was not claiming economic damages, the district court found that inquiry into the costs of Brown's treatments did not have "substantial probative value."

¶ 43    While the district court initially indicated that the medical costs might have some marginal relevance, simply because evidence is relevant does not mean that it has significant probative value. *People v. Rath*, 44 P.3d 1033, 1041 (Colo. 2002).

16

¶ 44    King Soopers argues that testimony about medical costs was probative because it would help the jury evaluate the "correctness and credibility of Dr. Fall's opinions." We disagree.

¶ 45    As stated above, Dr. Fall was called to testify about what treatment was medically necessary to treat Brown's injuries. She was not called to testify regarding the amounts of those treatments or as a billing expert. Thus, we fail to see how excluding testimony reflecting Brown's medical costs would impede a jury's ability to evaluate Dr. Fall's testimony regarding whether Brown's treatments were medically necessary to treat her injury. And given that both the probative value and prejudicial effect were minimal, the district court did not abuse its discretion in excluding evidence of the cost of Brown's medical care.

## IV.   Attorney Fees

¶ 46    In a cursory fashion, Brown requests her attorney fees pursuant to C.A.R. 38. We deny the request for appellate attorney fees because the request does not satisfy C.A.R. 39.1 (attorney fee request must be stated under a separate heading and explain the legal and factual basis for an award; mere citation to the rule or to a statute, without more, does not satisfy the legal basis requirement).

## V.   Conclusion

¶ 47   The judgment is affirmed.

JUDGE WELLING and JUDGE TAUBMAN concur.